**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01611-MSK-MEH

**TIMOTHY L. GATUMA,**

  Plaintiff,

v.

**ENCORE ELECTRIC, INC.,**

  Defendant.

_____

**OPINION AND ORDER ADOPTING RECOMMENDATION**
_____

  **THIS MATTER** comes before the Court pursuant to the Magistrate Judge's September 21, 2012 Recommendation **(# 23)** that the Defendant's Motion to Dismiss **(# 4)** be granted as to the Plaintiff's fourth claim based on a tort of wrongful discharge in violation of public policy.

  More than 14 days have passed since the Recommendation was issued and neither party has filed Objections under Fed. R. Civ. P. 72(b). Where no party files objections to a Recommendation, the Court applies whatever standard of review to that Recommendation that it deems appropriate. *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir.1991). Nevertheless, the Court has reviewed the matter under the otherwise applicable *de novo* standard of Fed. R. Civ. P. 72(b).

  The Court agrees with the Magistrate Judge that the wrongful discharge claim should be dismissed. In doing so, the Court writes briefly to address the Magistrate Judge's observation that judges of this Court have reached differing conclusion as to whether claims of wrongful

discharge in violation of public policy are pre-empted by the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-402. *Compare, e.g., Endahl v. Vinell Corp.*, 2006 WL 57496 (D. Colo. Jan. 10, 2006) (in which the undersigned concluded that effective preemption occurs) with *Kennedy v. Colorado RS, LLC,* 2012 WL 364091 (D. Colo. Feb. 1, 2012) (in which Judge Daniel concluded that tort claims premised on public policy are not preempted by CADA).

Because *Endahl* was issued several years ago, the undersigned takes the opportunity to revisit the issue in light of subsequent development of caselaw, including Judge Daniel's thoughtful opinion on the question. Nevertheless, upon further review of authority and consideration of the matter, the undersigned remains convinced that affording preemptive effect to CADA is appropriate in the circumstances presented here.

In *Endahl*, the court was guided by a line of cases beginning with *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 766 (Colo. App. 1988). There, the plaintiff brought both a statutory claim for handicap discrimination under CADA, as well as a claim for wrongful discharge in violation of public policy "based on his statutory right to participate in on-the-job training programs pursuant to" a provision of CADA. *Id.* at 763. The trial court granted summary judgment to the employer on both claims, finding that the employee was not handicapped as defined in the statute. On appeal, the Court of Appeals reversed that grant of summary judgment on the statutory claim (finding that the trial court improperly construed the statutory definition of handicap), but affirmed the grant of judgment on the wrongful discharge claim. At the time, the question of whether Colorado recognized the tort of wrongful discharge

in violation of public policy was still somewhat unsettled.[1] Nevertheless, *Gamble* concluded that "if . . .a public policy exception is available [as a cognizable claim], it is not available when . . . the statute in question provides the employee with a wrongful discharge remedy."[2] *Id. Gamble* has since spawned a number of cases that follow that holding, including *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo.App.2003), *Caspar v. Lucent Technologies, Inc.*, 280 F.Supp.2d 1246, 1249 (D.Colo.2003), and *Endahl*, among others.

There is, however, a competing strand of precedent arising out of *Brooke v. Restaurant Services, Inc.*, 906 P.2d 66 (Colo. 1995). There, an employee claiming to have been sexually harassed brought a claim for wrongful discharge in violation of public policy (with the public policy in question apparently being that embodied by CADA), as well as a claim for tortious interference with contract (in that her immediate supervisor interfered with her employment contract with the employer). The trial court eventually granted summary judgment to the employer on all claims. On appeal, the employee "contested only the grant of summary judgment on her tortious interference claim," and the Court of Appeals affirmed, finding that the employee was required to exhaust CADA's administrative remedies even though her claim sounded in tort. *Id.* at 67. The Colorado Supreme Court granted certiorari on two questions: (i) "whether . . . claimants must exhaust administrative remedies under [CADA] in cases which

---

[1] Although the Colorado Court of Appeals had occasionally addressed incipient "wrongful discharge in violation of public policy" claims earlier, the Colorado Supreme Court appears to have formally recognized the claim for the first time in 1992 in *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108 (Colo. 1992).

[2] *Gamble* noted that "insofar as Gamble's [tort] claim for relief states a claim for violation of any statutory right he may have had, [it] may appropriately be pursued under the [statutory] claim for relief." *Id.* at 766.

3

could be but are not brought pursuant to the Act"; and (ii) "whether . . . [CADA] provides an exclusive remedy." *Id.* at n. 1.

As to the first question, the Court reasoned that "the creation of a private right of action by state statute does not bar pre-existing common law rights of action unless the legislature clearly expressed its intent to do so." *Id.* at 68. Evidence of legislative intent must be either be expressly included in the statute or appear "by clear implication." *Id.* Finding no express intent in CADA to preempt common-law claims, the Court turned to the question of whether the statute clearly implied an intention to do so. It noted that "the Act does not provide redress to an employee for discriminatory conduct that does not result in an employment-related decision affecting the employee's pay, status, or tenure"; in other words, the Court did not construe CADA as offering a remedy for claims of sexual harassment that did not result in tangible employment consequences. *Id.* at 68-69. The Court also noted that the remedies available under CADA for aggrieved employees "are only incidental to the Act's primary purpose of eradicating discriminatory practices . . . on a broad scale rather than addressing the harm such practices cause on a case-by-case basis." *Id.* at 69. Accordingly, the Court concluded that "the Act does not explicitly bar non-Act claims and does not provide a comprehensive scheme for addressing sex discrimination in the workplace," and that "the legislature [did not] intend the Act to preempt the remedies that are otherwise available to victims of sexually discriminatory conduct in the workplace." *Id.* at 70. Thus, it held "that [CADA] does not provide an exclusive remedy for sex discrimination claims."[3] *Id.*

---

[3]In an accompanying footnote, the Court observed that its analysis "would be applicable to the other employment-related discrimination [*e.g.* race, age, etc.] prohibited by the Act." *Id.* at 70 n. 4.

Turning to the second question – whether an employee asserting tort claims associated with but not pursued under CADA must exhaust CADA's administrative process before filing suit – the Court concluded that exhaustion was not required. It noted that most reasonable reading of C.R.S. §24-34-306(14) (the exhaustion requirement) related to claims brought **pursuant** to the Act, not simply claims **arising out of** its prohibitions. *Id.* at 70. The Court noted that the Colorado Civil Rights Commission, the agency tasked with administering the Act, "has neither the jurisdiction to address common law claims arising out of discriminatory conduct not resulting in an employment-related decision nor authority to grant an (sic) claimant compensatory relief." *Id.* at 72. Thus, "it would serve no purpose to require a claimant to exhaust administrative remedies under the Act before filing non-Act claims." *Id.*

Several facts of *Brooke* warrant comment. First, and most notably, *Brooke* involved consideration of the interaction between CADA and a claim for tortious interference with contract, not a claim for wrongful discharge in violation of public policy. (Indeed, *Brooke* notes that the latter claim was raised by the employee in the trial court, but was not pursued on appeal.) There are significant qualitative differences between the two claims. Most notably, a tortious interference claim can lie against a defendant **other than** the employer – that is, a third-party to the employer/employee contractual relationship. *See e.g. Trimble v. City and County of Denver*, 697 P.2d 716, 726 (Colo. 1985) (finding that employee's supervisor could be liable for interfering with contract between employee and employer). In contrast, a claim for wrongful discharge must necessarily lie against the employer itself. This fact becomes significant when one observes that CADA prohibits discrimination only by "employers," C.R.S. § 24-34-402(1)(a). Although this Court has located no reported caselaw directly addressing the question,

5

CADA's definition of the term "employer" makes it unlikely that supervisors engaging in discriminatory acts could be sued individually. *See* C.R.S. § 24-34-401(3) (defining "employer" to mean "every . . . person employing persons within the state"); *accord Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996), *quoting Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993) ("The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act") (emphasis in original). Thus, a discrimination claim brought against an individual supervisor – *e.g.* such as a claim for tortious interference with contract in *Brooke* necessarily falls outside the reach of CADA.

A claim for wrongful discharge differs from a claim for tortious interference with contract in another important way. To state a claim for wrongful discharge in violation of public policy, where the "public policy" in question is a prohibition against race discrimination, the employee would have to show: (i) the employer deprived him of an important job-related right; and (ii) the action of the employer would undermine a clearly-expressed public policy relating to the employee's rights and privileges as a worker.[4] *See e.g. Lorenz*, 823 P.2d at 109. In circumstances such as these, the "important job-related right" and the "clearly expressed public policy" are identical – the right to/policy of non-discrimination in employment. Thus, for practical purposes, a claim for wrongful discharge predicated on a public policy of non-

---

[4]*Lorenz* recognized the wrongful discharge tort as primarily involving situations in which an employer "directed the employee to perform an illegal act as part of the employee's duties." 823 P.2d at 109. A separate line of cases developed the theory that a wrongful discharge claim could lie in circumstances where the employer retaliated against an employee for exercising statutorily-protected rights. *See Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1372 (Colo. App. 1989). The notion that a wrongful discharge claim could also invoke public policies of non-discrimination – essentially serving as a surrogate CADA claim – is relatively rare; *Brooke* might be the closest articulation of such a theory.

discrimination is indistinguishable from a statutory CADA claim of discrimination.

The same cannot be said for a claim of tortious interference. Questions of public policy arise in conjunction with such a claim only as one of many factors examined to whether the third-party's conduct is "improper" (*i.e.* tortious). *Trimble,* 697 P.2d at 726 (examining, among other things, "the social interest in protecting the freedom of action" of the third party). Thus, although it may be sensible for *Brooke* to hold that claims of tortious interference – even those predicated on acts of discrimination – may co-exist with statutory discrimination claims, the same cannot be said of wrongful discharge in violation of public policy claims (which *Brooke* did not purport to consider).

Second, the analysis in *Brooke* involved an older, less-expansive version of CADA. *Brooke*'s analysis stemmed from the conclusion that CADA "does not provide redress to an employee for discriminatory conduct that does not result in an employment-related decision affecting the employee's pay, status, or tenure [*i.e.* hostile environment sexual harassment]." 906 P.2d at 68, *citing* C.R.S. § 24-34-402(1)(a). This may have been an accurate statement of state law in 1995,[5] when *Brooke* was decided, but in 1999, the Colorado legislature amended § 24-34-402(1)(a) to expressly provide that it was also unlawful for an employer "to harass" employees – that is, to "create a hostile work environment based upon an individual's . . . . sex." Thus, to the extent that the result in *Brooke* was driven by the fact that CADA offered no relief

---

[5]Notably, the Colorado Supreme Court in *Brooke* does not cite to any precedent recognizing that hostile environment harassment did not fall within CADA's then-existing ban on discrimination in "terms, conditions, or privileges of employment." C.R.S. § 24-34-402(1)(a). However, it is notable that, on the federal level, the U.S. Supreme Court had recognized since 1986 that Title VII's identical prohibition of discrimination in "terms, conditions, or privileges of employment" included protection against hostile environment harassment. *Meritor Savings Bank v. Vinson,* 477 U.S. 63-67 (1986).

7

to the employee for the type of conduct her supervisor inflicted, that is no longer the case.

Third, a central premise of *Brooke* is that CADA "does not provide a comprehensive scheme for addressing sex discrimination in the workplace." 906 P.2d at 70. This conclusion appears to be drawn from the finding that "remedies under the Act for individuals . . . are only incidental to the Act's primary purpose of eradicating discriminatory practices by employers" on a more systemic basis. *Id.* at 69. *Brooke* noted that the Colorado Civil Rights Commission ("CCRC"), the agency responsible for enforcement of CADA, has as its primary remedy "a cease and desist order" under C.R.S. § 24-34-306(9). It stated that CADA "permits but does not require" other remedies – including reinstatement and back pay to the aggrieved employee, C.R.S. § 24-34-405 – and that the statute "does not authorize the CCRC to award damages that might otherwise be available in a common law action."

*Brooke*'s focus on the role of the CRCC is curious. It appears to focus on the CRCC's functions of investigating and conciliating charges of discrimination and, failing conciliation, the CRCC itself prosecuting an administrative claim for injunctive relief against further discrimination. 906 P.2d at 69, *citing* C.R.S. § 24-34-306(2), (9). CADA does indeed permit the CRCC, upon a finding of probable cause to believe that discrimination has occurred, to convene a hearing before an administrative law judge, C.R.S. § 24-34-306(4), to present the employee's case at that hearing, C.R.S. § 24-34-306(8), and to award injunctive and equitable relief. C.R.S. § 24-34, 306(9), § 24-34-405. But *Brooke* makes no mention of entirely separate enforcement option for the employee: the ability to bring a civil suit, in court, on his or her own behalf, alleging a violation of CADA. C.R.S. § 24-34-306(2)(b)(I)(B), (14). Such a suit offers the employee no additional remedies beyond the equitable remedies of reinstatement and back

8

pay contemplated by C.R.S. § 24-34-405, but does not offer additional damages for personal injuries, *see Watson v. Public Serv. Co.*, 207 P.3d 860, 866 (Colo. App. 2008). Thus, a civil suit does not expand the remedies available to the employee, but it does allow the employee to prosecute the claim in his or her own name (instead of having the CRCC prosecute the claim in an administrative hearing) and does offer the employee resort to the court system.

Again, *Brooke* predicated its conclusion on the finding that CADA "does not provide a comprehensive scheme for addressing sex discrimination in the workplace." But by failing to acknowledge the ability of an employee to bring a civil suit sounding in violation of CADA's non-discrimination requirement, the Court in *Brooke* appears to have somewhat understated the "comprehensiveness" of CADA's enforcement provisions. Indeed, the only difference in the enforcement mechanism between an employee suing on a tort-based wrongful discharge claim and an employee asserting a statutory CADA claim, is the ability of the former to recover non-economic damages whereas the latter cannot. This Court does not opine as to whether this difference is significant enough to justify allowing a tort-based clone of a statutory CADA claim to co-exist; rather, it notes only that *Brooke* does not clearly and unambiguously make such a finding.

For these and other reasons, this Court remains unconvinced that *Brooke* dispositively answers the question of whether CADA effectively pre-empts claims for wrongful discharge in violation of public policy where the policy in question is embodied by CADA's requirement of non-discrimination. At best, one can only attempt to infer from *Brooke* how the Colorado Supreme Court would resolve that precise question.

By contrast, cases such as *Gamble, Krauss*, and others, decided both before and after

*Brooke*, address the issue squarely and conclude that preemption is appropriate. This Court finds the *Gamble* line of cases to be more persuasive.

Ultimately, it is unnecessary to reach a conclusive result on the question for purposes of the issues presented here. Even if a free-standing wrongful discharge claim could be pursued in conjunction with a CADA claim, the Court would be inclined to dismiss it as duplicative of the Plaintiff's Title VII race discrimination claim. Just as the wrongful discharge claim duplicates a claim of race discrimination under CADA, it similarly duplicates the same race discrimination claim asserted under Title VII. To the extent that the unavailability of compensatory damages is the key reason under *Brooke* for permitting a wrongful discharge claim to proceed in these circumstances, the Court notes that such compensatory damages are also available to the Plaintiff under Title VII. 42 U.S.C. § 1981a(a)(1). Thus, there is no apparent justification to proceed on both a Title VII claim and a common law claim for wrongful discharge.[6]

---

[6]Admittedly, compensatory damages under Title VII are capped at certain amounts based on the size of the employer. 42 U.S.C. § 1981a(b)(3). Such damages are also capped under Colorado law. C.R.S. § 13-21-102.5(3)(B). To the extent the state cap might be slightly higher than the federal cap, this Court is not inclined to say that the difference is such that the Plaintiff should be permitted to simultaneously pursue two effectively identical claims as a result.

Accordingly, having conducted a *de novo* review of the Recommendation **(# 23)**, the Court nevertheless **ADOPTS** it in its entirety, as supplemented by the discussion herein. The Defendant's Motion to Dismiss **(# 4)** is **GRANTED IN PART**, insofar as the Plaintiff's fourth claim for relief, sounding in the tort of wrongful discharge in violation of public policy, is **DISMISSED**.

Dated this 30th day of October, 2012

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge